Good morning. May it please the Court, I'm Stephen Fiebiger on behalf of the appellant Heidi Nelson. The District Court erred granting summary judgment on Ms. Nelson's sex discrimination claim under the Minnesota Human Rights Act against the bank and defamation claims against the bank and Olivia Alvarado. Genuine issues of material effect exist with respect to pretext for discrimination on her NHRA claim and actual malice on her defamation claim. In addition, the District Court erred granting a qualified privilege for defamatory statements published to Ms. Alvarado's family members and boyfriend and not considering actual malice to defeat the privilege. We're asking the Court to reverse the summary judgment and remand the case to the District Court for trial. With respect to Ms. Nelson's NHRA claim, genuine issues of material fact exist whether evidence of pretext was presented to defeat summary judgment. First, the faulty or sham investigation by the bank was inadequate and unreasonable from which a jury could infer pretext for discrimination. The bank's failure to conduct a thorough inquiry into Ms. Alvarado's allegations of sexual harassment against Ms. Nelson created an inference that it was motivated by a predetermined outcome against Ms. Nelson instead of seeking the truth. The bank was on notice that Ms. Alvarado initially reported to Ann Plant, one of the vice presidents, that Ms. Nelson grabbed her boyfriend inappropriately rather than her while he was while they were attempting to leave. After that report, Ms. Alvarado met with the Human Resources Officer, Ms. Rutger, just a few minutes later and reported that Ms. Nelson had grabbed her breast said she wanted to take her into the bathroom and fuck her and later came back as the people were leaving. I think it was Mr. Mother Hill, Ms. Alvarado's boyfriend, and her were sad and licked her face and tried to do the same to her boyfriend. The interviewer, Ms. Rutger, never followed up with Ms. Plant about what had been reported to her by Ms. Alvarado other than after the investigative interview with Ms. Alvarado, Ms. Rutger contacted Ms. Plant about there was a text that had been forwarded to Ms. Rutger about Ms. Alvarado going to see a psychologist and needing a day off. And Ms. Rutger asked Ms. Plant, do you know anything about this seeing a psychologist or any kind of condition? And she reported she didn't. And that was the end of that. But significantly, she didn't ask anything about her initial report of what she said when she came to the bank on September 25th. And from the record that's present, a reasonable jury can conclude that the bank did not believe the results of its investigation because it had different versions from the reports to Ms. Plant and the reports to Ms. Rutger that were never presented and never followed up on. And I think it's also important to point out that the only other witness interviewed by the bank was Ms. Nelson. And that was the day after Ms. Alvarado's interview. And so Ms. Nelson denied the allegations and steered the interviewer. Counsel, that's not quite true. If you read, and, of course, this is subject of deposition, subject of everything, she appears to be evasive about it. Is that a fair characterization of the report of Mr. and Mrs. How do you say her name? Rutger. I think it's Rutger. Yeah. Good guess. Rutger. Go ahead. Proceed. So I think that's a way to look at it, Your Honor. That's what the words say. That's the bank's characterization. Wait, wait, wait. That's what the words say, correct? In the statement, the literal words. In the report. Yes. Yes. Okay. Good. Can't an employer rely on that? I think the employer needs to rely on a full investigation in terms of, is that all there is? Who else has information relative to the allegations that are presented? And here, they purposely avoided finding any more information that could lead to the truth. And so the employer, it looks like, did rely on the report, but that was inadequate. It was incomplete and did not thoroughly and fully investigate the serious allegations against Ms. Nelson that she sexually harassed and assaulted Ms. Alvarado in the bar. Well, did Ms. Nelson turn over the text messages that are referenced in some of the other information mentioned here? Did she come forward with them? She did. I think the text message actually was sent to Ms. Nelson by Ms. Alvarado and Ms. Nelson provided that. So Ms. Nelson did do the text messages because it asked what information you have, other persons that know information. You know what it says. Right. Okay. Did Ms. Nelson turn over that stuff? Yes. The text message was sent to her by Ms. I get that. But did she give it to Ms. Rutger? I think so. I'm not positive. Proceed. Okay. In lieu of my time, I defer the balance of the pretext arguments to the briefs. I'd like to turn to the defamation claims. And with respect to the defamation claims, it's our position that the district court erred by not considering Ms. Nelson's evidence of actual malice as evidence that would jeopardize the qualified privilege. The district court found that it was inadequate and so granted summary judgment with respect to Ms. Nelson's evidence of actual malice. It's our position that there was evidence of actual malice to defeat the qualified privilege that was granted to the bank. And we've set that out in the briefs. But significantly, we pointed to this July 2018 peer review by Ms. Alvarado that she presented to bank management that contained a number of critical and disparaging comments about Ms. Nelson that the district court characterized as scathing. And they really are. She talked about her being lazy, being either absent-minded or absent, coming to work late, taking two and a half hour lunches and leaving early. She noted that it's clear that Heidi's personal life is becoming a factor against the bank's overall image. She said she's letting her own issues and ballroom flaunts affect her work life. She indicated that Ms. Nelson stands around in the lobby talking to co-workers and even customers about whatever predicament she seems to find herself stumbling into at local bars. She's become lazy with scheduling and absent-minded in general. She noted that Heidi's position not only here at the bank, but also her position in the community, require her to hold demeanor to a higher standard than what she recently has been putting forward. And she wrapped it up. How does that show actual malice? I think it shows that she's not a good person in the community. And it's demeaning the bank and Ms. Nelson in the community, flaunting herself at bars and not presenting herself in a professional manner that would be expected of a baker. That was the bank's opinion of Nelson? That was in the peer review by Olivia Alvarado that she submitted to the bank. It was considered as part of the discharge decision in September of 2018. How would you define actual malice under Minnesota law? Actual malice is proof or statements that were made from ill will or improper motive or wantonly to cause injury to the plaintiff. And it's our position that the statements in the peer review, we also mentioned this text with Ms. Alvarado and her father after Ms. Nelson was fired, but they show ill will. And the district court... Does the ill will here have to come from the bank or from Alvarado? I think it can come from either. In a situation like this where the statements are made at the bank and the bank management has specific notice of the evidence of actual malice. You mean if the bank knew, on your theory, that Alvarado was acting with malicious intent? Yes, since she had made the statements with actual malice. And it's similar to the bar case that's cited in the briefs and was referenced by the district court. And I point to that, Your Honor, because... What's the evidence that the bank knew Alvarado acted with ill will as opposed to, you know, proper motive of reporting what she thought was misconduct or unprofessional conduct? Sure. The bank had the peer review that had this laundry list of denigrating and disparaging comments about Ms. Nelson's work ethic, work habits, her personal life in the community. The bank has notice of that. Right. But why does that show, why would the bank know that that was motivated by ill will as opposed to Alvarado's honest assessment of the supervisor? Because it wasn't true and Ms. Nelson was never asked about any of it. They did not raise the peer review with her ever. So this is something only the bank and Ms. Alvarado knew about. And she, Ms. Alvarado, indicated in the peer review that she wanted the bank to take action towards Ms. Nelson, which we think shows a motivation that she wanted something done about Ms. Nelson at the bank. And she basically finished that off with her allegation about sexual harassment and the assault at the bar, you know, in September. One other point on this bar case that the district court referenced, the district court compared our evidence of actual malice to that in bar and said it didn't rise to that level. And that's not the test. There isn't a severity level test for actual malice. But it also shows that the district court improperly weighed our evidence of actual malice, which under all of the case law is a jury function. So if there's actual malice, that should be submitted to the jury and it's not for the district court. With that, I'll reserve the balance of my time. Thank you. You may. Thank you for your argument. Ms. Conlon, we'll hear from you. You may proceed. Good morning. May it please the court, my name is Erin Conlon and I represent both respondents in this matter, Blake Elmobank and Olivia Alvarado. This appeal arises from a straightforward employment dispute. While appellant tries to inject many issues into this appeal in an attempt to undo the district court's dismissal of both of her claims at summary judgment, this case remains one that can be decided on well-established principles of employment law. Appellant Heidi Nelson is challenging her termination of employment from Blake Elmobank, following a good faith investigation by the bank into allegations made by Olivia Alvarado that her boss, Appellant Nelson, sexually harassed her at a bar. Alvarado, who is 22 years old at the time, reported that Nelson grabbed her breast, licked her face and made sexually explicit comments to her at the bar. Alvarado reported this to human resources at the bank in accordance with the bank's sexual harassment policy and following an investigation into those allegations, the bank decided to terminate Nelson's employment. Following her termination. Let me ask you, because you're at the factual point, in Ms. Rutger's statement, she says, are there notes or texts or anything? And the plaintiff here says, pass text messages, et cetera, et cetera. Did she turn those over? I do not believe that Ms. Nelson turned any text messages over to Ms. Rutger as part of the investigation. We received them during discovery, but I do not believe it was part of the investigation back in 2018. Did she supply any information from the other persons that she lists? She lists four or five people here. I believe that she provided their names and she notified Ms. Rutger that they could be eyewitnesses. And jumping down to that point, what Ms. Nelson is claiming here, I believe the language used is that there was a sham investigation and that she's saying that the sham investigation can establish that actually her termination was pretext for sex discrimination. And here, I mean, it's not uncommon for employers to second guess how an investigation is conducted by their employer. But simply because there could be another way to do an investigation, that doesn't mean that there's pretext for sex discrimination under the Minnesota Human Rights Act. Her main complaint appears to be that the bank and its human resources department did not go down to the local bar and interview people that were there that night. There's no rule, law, regulation, policy of the bank or otherwise that would require a bank's HR department to do so. HR only has a function over its own employees. And it interviewed the two employees who are relevant in this matter, Ms. Alvarado and Ms. Nelson. What about Plant, the immediate supervisor, who the complaint was first made to? Get her name right, I'm sorry. Yes, Ann Plant was Ms. Nelson's supervisor. There's no dispute here that she was not at the bar that night. The factual record demonstrates and... But she was the first person to receive the complaint, right? Yes. Ms. Alvarado came to work after the incident over the weekend. She went to Ann Plant, who was one of her supervisors. She started to tell her this story. And the record demonstrates from both Ms. Alvarado's testimony and Ms. Plant's deposition testimony that Ms. Plant said, hold on, this is a matter for HR. This isn't a complaint that should come to me. And so Ms. Plant just walked her down the hallway and had her instead tell HR about the matter from there. Does the deposition or anything show how long they talked, Alvarado and Plant? The deposition does not state how long that initial conversation was. Is there a reasonable inference from the deposition and the other evidence, how long they spoke? I believe that there's a reasonable inference that it was much shorter than the conversation that Ms. Alvarado ultimately had with Human Resources because she was able to tell her full story to Human Resources. And because Ms. Plant said that she did cut off Ms. Alvarado when she was providing her initial report. And all Ms. Alvarado said to Ms. Plant was that Ms. Nelson grabbed the boyfriend, right? Yes. And so I also understand that appellate Heidi Nelson is raising the argument that Ms. Alvarado changed her story. That's not true. What the evidence shows is that she initially told Ms. Plant that Nelson did make physical contact with her boyfriend. That's the same thing that she told Ms. Rutger and she added that Ms. Nelson also made physical contact with her. There's no dispute here that Ms. Alvarado's story has always been consistent and that she claims that she was sexually harassed by Ms. Nelson at the bar. And that has been a thread throughout, from 2018 through her deposition in 2021. Now the other way that Ms. Nelson is attempting to establish pretext, other than pointing at the so-called sham investigation, is through the use of comparator evidence. And she's pointing to two specific males that she claims are her comparators, Barney Patterson and Steve Madsen. Now the test for determining whether an employee is similarly situated for purposes of invoking the comparator analysis is a rigorous test. Those employees must be similarly situated in all relevant respects. The Eighth Circuit has said as much in the Bone case, which is from 2012. It's undisputed here, however, that Ms. Nelson, her direct supervisor, was Anne Plant, was Ms. Plant. Neither of these other two alleged comparators reported to Ms. Plant. Neither of these other two alleged comparators were a teller like Ms. Nelson was. Neither of them had engaged in similar conduct. Indeed, all record evidence demonstrates that there was never any type of sexual harassment claim brought against either of these men. And so the district court correctly found that they could not be comparators to Nelson as a matter of law. I would like to move on to the defamation claim. To prevail on a defamation claim, Nelson has the burden of establishing that the bank or Alvarado made a false or defamatory statement about her in an unprivileged publication to a third party that harmed her reputation in the community. As the district court correctly held, Nelson's claim fails because each of the statements that she's alleging are defamatory were subject to a qualified privilege. Qualified privileges apply in a broad range of circumstances. And the test is, when a statement is made in good faith, on a proper occasion, and from a proper motive, a qualified privilege attaches such that the speaker cannot be held liable for defamation. Appellant Nelson is pointing to two buckets of statements that she is saying qualify as defamation. First, she's poking at Alvarado's statements that she made to people at the bank as part of her complaint in accordance with the sexual harassment policy. And second, she's pointing to statements that she made to her family member as defamation. Turning to the first kind of bucket of statements, the case law is clear that these are subject to a qualified privilege. And this is based on good public policy that's established by Minnesota district courts and also Minnesota state courts. But the public policy is that employees should not be intimidated from reporting sexual harassment in accordance with their employer's policy of the specter of a defamation lawsuit. We do not want to discourage employees from reporting this conduct as their employer's mandate, occasionally, and in this case, in their policies. Nelson is arguing that this privilege was lost because Alvarado acted with actual malice. For evidence of actual malice, she's pointing to this peer review. As an initial matter, appellate appears to be claiming that this is a fact issue that should be given to the jury and that it was error for the district court to address the actual malice issue. This is not so. When the record evidence contains no evidence of actual malice, it is proper to dismiss defamation claims at the summary judgment stage. That's been held in both the Minnesota appellate court and in this circuit. And the site for that is Sherman v. Rinchman, and that is an Eighth Circuit case from 2012. Well, Counsel, we're dealing with the Minnesota law. We are. So what about the Barr case, B-A-H-R case? Yes. The Barr v. Boise case is a Minnesota Supreme Court case from 2012. In that case, the defendant referred to plaintiff out loud in front of other employees in the workplace, I believe, as a lazy, fat F-U-C-K-E-R. That's not what happened here. Ms. Alvarado submitted a peer review three months prior to this alleged incident. It was confidential. It was submitted via email, and it was submitted at HR's request. In other words, she was, again, complying with her employer's obligations imposed on her. She was required to submit this peer review for her supervisor, Nelson. She was not voluntarily making these statements out in the open in the workplace. She submitted this in writing to Julie Rutger. Her statements were, again, made three months prior. What needs to be shown to defeat a qualified privilege of actual malice needs to be contemporaneous. In the Barr case, I believe that there was only a two-week separation between the alleged defamatory statements and the statements that the court held showed actual malice. Here, there's three months. That's very different than the Barr case. Well, wouldn't it be possible for an employee to give a peer review that was made with actual malice if the employee was out to do in a fellow employee? It could be possible, Your Honor, but not here for a few different reasons. First, as this... I was just responding to your point that Barr is different because this was an internal communication that was made pursuant to a complaint process. Sure. That doesn't seem dispositive. I agree, Your Honor, that it's not dispositive. I don't understand why it's different than Barr, but one could still maliciously attack another employee through the peer review process. That's possible, Your Honor. The reason why that's not the case here is that despite Alvarado's comments about Ms. Nelson, they were all focused on her position at the Barr, or, I'm sorry, her position at the bank as a teller about her professional conduct at work. What this Court has said in Friedel v. Blakely Printing, or, I'm sorry, not this Court, the Minnesota Supreme Court in 1925, is that when you're looking at actual malice, what you're looking for is personal ill-feeling. And that's what the district court in this case based its opinion on, that there was no personal ill-feeling showed by this peer review, which was really focusing on professional conduct, not a personal ill-feeling. And that's another distinction between the Barr case. Second, the second bucket of supposed defamatory statements is statements that Alvarado made to her family members. Alvarado, her undisputed deposition testimony is that after this event occurred on a Friday night in a bar, she spoke with her parents, her step-parents, and her long-term significant other to decide how to move forward. She didn't know if she wanted to report this conduct to the bank. She didn't know what she wanted to do, and she was seeking advice from her close family members about what to do. This certainly qualifies under the qualified privilege doctrine. When a statement is made in good faith, on a proper occasion, from a proper motive, a qualified privilege can be found to protect those statements. This is not a case where Alvarado posted something on social media, where she went to a local paper, where she was discussing this matter openly at work. This is a case where she went to discuss with her parents an incident that happened to her. As the Minnesota Supreme Court has also noted in the Marino decision, which is from 2000, that a qualified privilege can apply when statements are about one's own conduct and one's own affairs. Certainly Ms. Alvarado's comments to her family members falls within that definition. Because all of the alleged infamatory statements are subject to a qualified privilege, we would ask that this court affirm the district court's dismissal. Thank you. On that second group of statements, how does the Minnesota court define the privilege? Is it stated in terms of communications among family members? No, it is not. I am not aware of a decision that specifically defines it in. What's the category of privilege here then? The general standard of a statement that is made in good faith, on proper occasion, with a proper motive. Counsel, are you familiar with the Minnesota court's Constance reference to this restatement second of torts sections that they refer to all the time? In 591? In the briefing, yes. Because it does have member and family and well-being of member and family in the restatement. Yes. I mean, I think that the issue here is really that she told her. Well, have they adopted it? That's my real question. I didn't want to ambush you. Yes. But I did want to ask you, do you think they've adopted the restatement of torts? This Lewis case particularly cites a lot of them. But do you think they've adopted that standard or not? Or do you know? I do not know, Your Honor. Thank you. Thank you. Thank you. Okay. Thank you for your argument. Mr. Fiebiger, we'll hear rebuttal. Just briefly in rebuttal, Your Honors, no, the Minnesota Supreme Court has not adopted the restatement to afford a qualified privilege for family and friends. And notably in the restatement piece, it allows the qualified privilege in circumstances where the statements are made to look out for somebody's well-being or for the benefit of one of the other family members. That's not here. Additionally, Ms. Alvarado had an option to go report the defamatory statement to her employer as sexual harassment, which she did. And so there was no reason for her to publish the statements anywhere else. In terms of the actual malice issue, there's no case in Minnesota that has a contemporaneous requirement. In the Barr case, the original one of the statements, and the district court used it here for actual malice, was he was called a lazy, fat efferer. And that was September 27th in 2001, and it was fired sometime in November. So the timeframe isn't an issue if there's actual malice between the speaker and the person claiming they've been defamed. And that's what we have here. Just in terms of this text, there were some questions about in the report. It's at the end on page 28, question 11. It talks about, and plan forwarded a text message to me that Olivia originally sent to Heidi on September 23rd, 2018 at 7.46 p.m. This was her notifying her that she wasn't coming into work because she wasn't and she may go in to see her psychologist, which was a lie. I see my time is up. We would ask that the district court reverse the summary judgment. Thank you. You would ask that we reverse it. I'm sorry. I'd ask that you reverse the district court. Thank you, Your Honor. Very well. Thank you for your argument. Thank you to all counsel. The case is submitted and the court will file a decision in due course. Counsel are excused.